O

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RONNIE L. MORGAN, JR. | ) | NO. CV 12-3594-PA (MAN) |
| | ) | |
| Plaintiff, | ) | MEMORANDUM AND ORDER DISMISSING |
| | ) | FIRST AMENDED COMPLAINT WITH LEAVE |
| v. | ) | TO AMEND |
| B. HALBESEIN, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff, a federal prisoner proceeding *pro se* and *in forma pauperis*, filed a civil rights complaint, pursuant to <u>Bivens v. Six Unknown Named Agents</u>, 403 U.S. 388, 91 S. Ct. 1999 (1971), on August 2, 2012. Plaintiff denominated the complaint a First Amended Complaint, although it was the first complaint filed in this action.[1]

In screening a *pro se* civil rights complaint, the Court must construe its allegations liberally and must afford the plaintiff the

_____

[1]   Plaintiff lodged an earlier version of his complaint along with a request to file it without prepayment of the full filing fee, but that complaint was never filed because leave to proceed without prepayment of the filing fee was denied.

benefit of any doubt.  <u>Wilhelm v. Rotman</u>, 680 F.3d 1113, 1121 (9th Cir. 2012).  The standard applicable on screening is the standard for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *Id*.  The complaint need not contain detailed factual allegations, but must contain sufficient factual matter to state a claim for relief that is plausible on its face.  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009); <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007).  If a complaint is dismissed, a *pro se* litigant must be given leave to amend unless it is absolutely clear that the deficiencies of the complaint cannot be cured by amendment.  <u>Karim-Panahi v. Los Angeles Police Dep't</u>, 839 F.2d 621, 623 (9th Cir. 1988); <u>Noll v. Carlson</u>, 809 F.2d 1446, 1448 (9th Cir. 1987).

## ALLEGATIONS OF THE FIRST AMENDED COMPLAINT

Plaintiff is currently incarcerated at the Federal Correctional Institution at Lompoc ("Lompoc").  (First Amended Complaint at 1.)  He has sued the following Lompoc officials: B. Halbeisen, activities lieutenant; C. Espinoza, recreation specialist; Victor Flores, unit manager; E. Tan, mid-level practitioner (MLP); David Escalante, counselor; Valerie Ericksen, medical department records and administration employee; Leonardo Giron, medical department director and physician; Dr. Gross, physician; Dr. Dahli-Wahl, medical department administrator; D. Baker, lieutenant; J. Lane-Lewis, lieutenant; A. Salandana, assistant health services administrator (AHSA); J. Brewer,

case manager; and Linda Sanders, warden.[2]  (*Id.* at 1, 6.)  Plaintiff also names as defendants the Federal Bureau of Prisons ("BOP") and Robert McFadden, BOP regional director.  (*Id.*)  The BOP is named as a defendant solely for purposes of plaintiff's "alternative claim" under the Federal Tort Claims Act.  (*Id.* at 7.)

Plaintiff alleges that he was refused visitation with his common law wife, Tamyra Love Nesbitt, who was approved as a visitor in 2008 and visited him many times at the two BOP correctional facilities where he was previously incarcerated.[3]  (First Amended Complaint at 10-11, Ex. 1A.)  Plaintiff was told that Nesbitt was not approved as a visitor, because she failed to include her 2001 misdemeanor conviction in her Lompoc visitor update form.  (*Id.* at 10-11.)  Nesbitt disclosed this conviction in her original visitor information form, which was on file in the BOP centralized system, and she was told by officials at plaintiff's prior facility that she did not need to mention it again in the update form.  (*Id.* at 10-12, Ex. 1B.)

---

[2]  Plaintiff has not listed Warden Sanders in the caption of the First Amended Complaint.  Rule 10(a) of the Federal Rules of Civil Procedure requires that the name of each defendant be included in the caption of the complaint.  *See* Ferdik v. Bonzelet, 963 F.2d 1258, 1262-63 (9th Cir. 1992).  The Court will not order service of process on a defendant not listed in the caption.

[3]  Plaintiff also alleges that in 2009, while he was incarcerated at the United States Penitentiary in Atlanta, a prison guard made sexual advances to Nesbitt, and she complained to the warden.  (First Amended Complaint at 13, Ex. 1C].  Soon afterwards, plaintiff was transferred, first to the Federal Correctional Institution at Pollock, Louisiana, and then to Lompoc.  (First Amended Complaint at 13-14.)  Plaintiff believes he was transferred to prevent him and Nesbitt from bringing an action against the guard.  (*Id.*)  The USP Atlanta incident, however, has no bearing on plaintiff's claims in this action, and the named defendants had nothing to do with the transfers.

1   After plaintiff filed a grievance regarding the matter, defendant
2   Brewer offered to approve Nesbitt as a visitor if plaintiff withdrew his
3   grievance.  (First Amended Complaint at 13.)  Plaintiff agreed, but a
4   week later Brewer told him that Warden Sanders had intervened and
5   refused to approve Nesbitt as a visitor.  (*Id.*)  Plaintiff then
6   proceeded with his grievance.  (*Id.*)

7

8   Plaintiff contends that Nesbitt and all others previously approved
9   as his visitors were denied approval to visit him at Lompoc, including
10  his terminally ill mother, who had wanted to visit him one last time,
11  with Nesbitt helping her make the journey.  (First Amended Complaint at
12  14, 18.)  Plaintiff's mother died on April 9, 2011, and Warden Sanders
13  refused plaintiff's request for a furlough to attend her funeral.  (*Id.*
14  at 18; Exs. 1D, 1E.)

15

16  Plaintiff alleges that, after he filed a grievance contesting the
17  refusal to approve Nesbitt as a visitor, defendant Escalante, who
18  reviewed the grievance in his capacity as plaintiff's counselor, told
19  plaintiff that Warden Sanders would not like it and would "go against"
20  anything plaintiff sought through the administrative remedy process.
21  (First Amended Complaint at 18.)  Plaintiff contends that Escalante's
22  comment shows that Warden Sanders refused to permit him to attend his
23  mother's funeral for retaliatory reasons.  (*Id.* at 18-19.)  Moreover,
24  on April 8, 2011, defendant Flores told plaintiff, using a racial
25  epithet, that he would "wipe [his] ass" with any administrative
26  grievance plaintiff filed.  (First Amended Complaint at 17, Exs. 2A,
27  2B.)

28

About a month earlier, on March 4, 2011, plaintiff slipped and fell on a wet spot on the gym floor and ruptured his right Achilles tendon. (First Amended Complaint at 20.) Defendant Espinosa, who was supervising the gym that evening, had previously been informed of the wet spot but did not order it cleaned up. (*Id.*; Exs. 3A-3C.)

Plaintiff alleges that he received inadequate medical care for his ruptured Achilles tendon. (First Amended Complaint at 23.) Defendant Tan initially diagnosed a sprained ankle and did not order pain medication, although plaintiff was in a wheelchair, unable to walk, and in obvious pain. (*Id.*) Four days later, plaintiff was prescribed pain medication, but he was directed not to take it until after his surgery. (*Id.*) Plaintiff finally received pain medication seven days after the injury. (*Id.* at 23-24.) However, although his surgeon had prescribed Vicodin, Dr. Gross prescribed Tylenol 3, which did nothing to alleviate plaintiff's severe post-surgery pain. (*Id.* at 24.)

After plaintiff filed a grievance regarding his pain medication, he was instructed to meet with defendant Ericksen. Ericksen told plaintiff that he would be given Vicodin if he withdrew his grievance. (First Amended Complaint at 27.) Plaintiff signed the withdrawal form but never received the promised medication. (*Id.*)

Plaintiff also alleges that his surgeon prescribed physical therapy, but he has not received any and defendant Giron has declined to order a transfer to an institution where rehabilitative therapy could be provided. (First Amended Complaint at 29, Ex. 3D.) As a result, 15 months after the surgery, plaintiff has difficulty with full extension

1    of the tendon while walking and suffers from tightness and a burning

2    sensation in the affected area.  (First Amended Complaint at 29.)

3

4        On December 16, 2011, when plaintiff was leaving the dining hall,

5    defendant Halbeisen searched him and found a calendar in his possession,

6    of a type distributed by the prison chaplain to Lompoc inmates.  (First

7    Amended Complaint at 30.)   According to an attached declaration by

8    another inmate, a clerk at the religious services office had given him

9    some calendars to distribute, and he had given three to plaintiff,

10   asking him to give two of them to other inmates.  (*Id.*, Ex. 4A.)

11   Immediately before searching plaintiff, Halbeisen had searched the other

12   inmate, who had the same calendar in his possession, and had returned

13   his calendar to him without taking any action.  (*Id.*, Ex. 4A.)

14   Halbeisen and defendant Lane-Lewis took plaintiff into custody,

15   disregarding the other inmate's explanation that plaintiff's calendar

16   was the same as his.  (First Amended Complaint at 30, 32.)  Defendant

17   Baker helped escort plaintiff.  (*Id.* at 32.)  Plaintiff was charged with

18   possession of unauthorized property.  (*Id.*)  He was confined to the

19   Special Housing Unit (SHU) for 28 days, fired from his job at Unicor,

20   and his telephone and commissary privileges were suspended.  (*Id.*)  This

21   is the first disciplinary punishment plaintiff has received during his

22   ten years of incarceration.  (*Id.* at 31.)

23

24       While in the SHU, defendant Halbeisen told plaintiff that Halbeisen

25   "might not let [plaintiff] get out" because Halbeisen "didn't like

26   [plaintiff]'s kind," *i.e.,* "not prisoners, not Mexicans, but your kind."

27   (First Amended Complaint at 30, Exs. 4B, 4C, 4D.)  Plaintiff is African-

28   American.  (First Amended Complaint at 30.)  He and the other inmates

who heard the comment, including his Mexican-American cellmate, interpreted it as a racial slur and a threat. (First Amended Complaint at 30, Exs. 4B, 4C.)

Before the religious calendar incident, on Thanksgiving day, plaintiff observed Officer Camacho physically accost an inmate. (First Amended Complaint at 35.) Camacho reported that the inmate was the aggressor. (*Id.*) On December 19, 2011, plaintiff wrote an affidavit on behalf of the inmate setting forth what he saw. (*Id.*) After his release from the SHU, plaintiff was questioned regarding the matter. (*Id.*) Defendant Escalante later told him that defendant Flores had refused to approve his visitor's list because plaintiff provided an affidavit in the Camacho matter. (*Id.*)

In his "Statement of Claims," plaintiff lists the following claims: (1) a First Amendment free association claim against Escalante based on his refusal to approve plaintiff's visitor list; (2) retaliation claims against Brewer and Sanders based on their refusal to approve plaintiff's visitor list; (3) retaliation and Title VII claims against Flores for using a racial slur against plaintiff and threatening retaliation for filing grievances; (4) a First Amendment claim against Escalante for threatening adverse action by the warden unless plaintiff withdrew a grievance; (5) an Eighth Amendment claim against Espinoza for deliberate indifference to plaintiff's safety; (6) a negligence claim under the FTCA against the BOP and Espinoza; (7) Eighth Amendment claims for deliberate indifference to plaintiff's serious medical needs against Gross, Dahli-Wahl, Tan, Giron, and Salandana; (8) a tort claim (alleged as a First Amendment retaliation claim in the body of the First Amended

Complaint) against Ericksen for misleading plaintiff into withdrawing his grievance; (9) a Title VII claim against defendant Halbeisen for directing a racial slur and threat against plaintiff; and (10) retaliation claims against defendants Halbeisen, Lane-Lewis, and Baker based on plaintiff's disciplinary charge. (First Amended Complaint at 8-9.)

Plaintiff seeks damages and protection from further retaliation. (First Amended Complaint at 37-40.)

**DISCUSSION**[4]

**I.  PLAINTIFF FAILS TO STATE A FIRST AMENDMENT FREE ASSEMBLY CLAIM BASED ON DENIAL OF VISITATION.**

Plaintiff asserts a First Amendment freedom of association claim against defendant Escalante for refusing to approve Nesbitt as a visitor. (First Amended Complaint at 8, 10.)

"[F]reedom of association is among the rights least compatible with

---

[4]    The Court expresses no view regarding whether plaintiff has exhausted his administrative remedies, as required by the PLRA, with respect to each of his claims.  Failure to exhaust under the PLRA is an affirmative defense, and "inmates are not required to specially plead or demonstrate exhaustion in their complaints." Jones v. Bock, 549 U.S. 199, 216, 127 S. Ct. 910, 921 (2007).  In screening a complaint under the PLRA, the Court does not consider whether the claims are exhausted. Id. ("[T]here is no basis for concluding that Congress implicitly meant to transform exhaustion from an affirmative defense to a pleading requirement by the curiously indirect route of specifying that courts should screen PLRA complaints and dismiss those that fail to state a claim.").

incarceration," and some curtailment must be expected in the prison context. Overton v. Bazzetta, 539 U.S. 126, 131, 1213 S. Ct. 2162, 2167 (2003). In Overton, the Supreme Court declined to define the extent to which the First Amendment right of association survives incarceration, because it found that the challenged regulations, although quite restrictive, withstood constitutional scrutiny under the four-part test of Turner v. Safley, 482 U.S. 78, 89, 107 S. Ct. 2254, 2261-62 (1987).[5]

Here, plaintiff is not challenging the Lompoc visitation policy; he is challenging the refusal to approve particular visitors. "[T]here is no constitutional right to 'access to a particular visitor.'" Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996)(quoting Kentucky Department of Corrections v. Thompson, 490 U.S. 454, 461, 109 S. Ct. 1904, 1909 (1989)(holding that "denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated by a prison sentence, and therefore is not independently protected by the Due Process Clause")). A denial of visits by a particular visitor, or a temporary denial of all visitation, does not raise the same constitutional concerns as a blanket withdrawal of all visitation privileges for a protracted period, especially if imposed arbitrarily or irrationally. Dunn v. Castro, 621 F.3d 1196, 1203-05 (9th Cir. 2010); see Overton, 359 U.S. at 137, 123 S. Ct. at 2170 ("If the withdrawal of all visitation privileges were permanent or for a much

---

[5] The Turner factors are: (1) the connection between the regulation and a legitimate, neutral governmental purpose; (2) the existence of alternative means of exercising the right; (3) the impact that accommodation of the right would have on guards, other inmates, and prison resources; and (4) the absence of ready alternatives to the regulation. Turner, 482 U.S. at 89-91, 107 S. Ct. at 2261-63.

longer period, or if it were applied in an arbitrary manner to a particular inmate, the case would present different considerations").

Applying these principles, the Court finds that plaintiff has not alleged sufficient factual content to plead a First Amendment denial of visitation claim under the <u>Iqbal</u> standards.  First, it is unclear whether he is, in fact, alleging a complete denial of visitation during his time at Lompoc.  Moreover, except for Nesbitt, he has not alleged what reasons were given to him for the refusal to approve his visitors.  If no reasons were given, plaintiff should clearly say so.  Finally, although plaintiff asserts this claim against defendant Escalante, he does not allege that Escalante made the decision not to approve Nesbitt or plaintiff's other previously-approved visitors, and plaintiff's retaliation claims suggest that the decision was made by other persons.

Accordingly, plaintiff fails to state a First Amendment free association claim against Escalante.

## II.  **PLAINTIFF FAILS TO STATE A RETALIATION CLAIM AGAINST ANY DEFENDANT EXCEPT FLORES.**

Plaintiff asserts the following retaliation claims: (1) against Brewer, Sanders, Flores, and Escalante for refusing to approve his visitor's list; (2) against Flores for threatening him with retaliation for filing a grievance; (3) against Escalante for threatening adverse action by the warden unless plaintiff withdrew a grievance; (4) against Halbeisen, Lane-Lewis, and Baker for bringing a disciplinary charge; (5) against Ericksen for tricking plaintiff into withdrawing a grievance;

and (6) against McFadden for including a false statement in his response to plaintiff's administrative grievance.  Plaintiff contends that all these actions were undertaken in retaliation for plaintiff's exercise of his administrative remedies.

A.  **Applicable Legal Principles**

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005)(*internal footnote omitted*).  Adverse action is action that "would chill a person of ordinary firmness" from engaging in the protected activity. Pinard v. Clatskanie School District 6J, 467 F.3d 755, 770 (9th Cir. 2006); *see also* White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000).  Plaintiff has the burden of demonstrating that his exercise of his First Amendment rights was the substantial or motivating factor behind defendants' conduct.  Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S. Ct. 568, 576 (1977); Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989).  Plaintiff also bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains.  Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995).

Plaintiff must plead enough facts to "plausibly" establish a

11

1  defendant's retaliatory motive.  *See* Iqbal, 129 S. Ct. at 1949.  A

2  retaliation claim is not plausible if there are "more likely

3  explanations" for the action.  *See* Iqbal, 129 S. Ct. at 1951 (given more

4  likely explanations for detention, factual allegations did not plausibly

5  establish discriminatory purpose).  "When the causation element of

6  *Rhodes* is combined with the pleading requirements of *Iqbal*, it is

7  apparent that to state a retaliation claim a prisoner must plead

8  sufficient facts to make plausible a claim that the defendants' actions

9  were motivated by a desire to retaliate for his exercise of a

10 constitutional right, rather than by some other motive."  Yelenich v.

11 Cate, 2011 WL 1100124, *2 (N.D. Cal., Mar. 23, 2011).

12

13    **B.    Claims Against Brewer, Sanders, Flores, And Escalante**

14         **Pertaining To Visitor's List And Funeral**

15

16    Plaintiff alleges that Brewer offered to approve Nesbitt as a

17 visitor if plaintiff withdrew his grievance regarding the matter, but

18 Warden Sanders intervened and refused to approve Nesbitt as a visitor

19 "under any circumstances." (First Amended Complaint at 13.)  Plaintiff

20 contends that the refusal to approve Nesbitt was retaliatory.  (*Id.*)

21 First, plaintiff has not alleged a plausible retaliatory motive on the

22 part of either Brewer or Sanders.  *See* Iqbal, 129 S. Ct. at 1949.  An

23 allegation that defendants refused to approve Nesbitt as a visitor in

24 retaliation for plaintiff's grievance challenging the refusal is

25 circular.  Second, plaintiff has not alleged any retaliatory act on the

26 part of Brewer.  Plaintiff does not allege that Brewer refused to

27 approve Nesbitt; on the contrary, he alleges that Brewer was willing to

28 approve her as a visitor if plaintiff withdrew his grievance, but was

1    overridden by Warden Sanders. (First Amended Complaint at 13.)

2

3         As for Warden Sanders, plaintiff's allegation that her motive for

4    refusing to approve Nesbitt was retaliatory is purely conclusory.

5    (First Amended Complaint at 13.)  In fact, plaintiff's allegations

6    suggest that, rather than reacting to plaintiff's grievance, Sanders

7    merely refused to deviate from a previous refusal to approve Nesbitt.

8    With respect to plaintiff's retaliation claim against Warden Sanders for

9    refusing him permission to attend his mother's funeral, plaintiff has

10   not alleged an absence of legitimate correctional goals for the refusal.

11   *See* Pratt, 65 F.3d at 806.

12

13        Later in the First Amended Complaint, plaintiff alleges that

14   Escalante told him that Flores refused to approve plaintiff's visitor

15   list in retaliation for his affidavit on behalf of an inmate wrongfully

16   accused of physically assaulting a guard. (First Amended Complaint at

17   35-36.)  Plaintiff's allegations are sufficient to state a plausible

18   retaliation claim against Flores on this basis. *See* Branch v. Grannis,

19   2010 WL 2605376, *5 (E.D. Cal., Jun. 28, 2010)(plaintiff stated a

20   plausible retaliation claim against a defendant who told him he would

21   be "dealt with" after plaintiff exercised his First Amendment rights by

22   filing a declaration on behalf of an inmate attacked by a prison

23   official).  Plaintiff's allegations that Escalante told him that

24   Flores's refusal was retaliatory do not, however, provide a factual

25   basis for asserting a retaliation claim against Escalante, because

26   plaintiff has not alleged a retaliatory act on Escalante's part. (First

27   Amended Complaint at 35-36.)

28

C.   **Claims Against Flores And Escalante For Threatening Retaliation**

Plaintiff contends that: Flores threatened retaliatory action against him for filing a grievance; and Escalante threatened him with adverse action by Warden Sanders unless he withdrew a grievance. (First Amended Complaint at 8, x.)

Plaintiff alleges that Flores made a crude remark about what he would do with any future grievances plaintiff tried to file with him, namely, Flores intimated that they would not be processed. (First Amended Complaint at 17; Ex. 2A.) This comment by Flores, however rude or improper, does not constitute a retaliatory threat. Plaintiff has not alleged that Flores was motivated to make this crude comment based on plaintiff's past grievances. Plaintiff, therefore, has not alleged retaliatory motivation.

Plaintiff's allegation that Escalante threatened retaliation against plaintiff by Warden Sanders if plaintiff continued to pursue his grievance does not state a retaliation claim against Escalante, because plaintiff does not allege that Escalante *did* anything. (First Amended Complaint at 18.)

D.   **Claims Against Halbeisen, Lane-Lewis, And Baker Pertaining to Disciplinary Charge.**

Plaintiff contends that Halbeisen, Lane-Lewis, and Baker brought a disciplinary charge against plaintiff and confined him to the SHU in

retaliation for filing grievances.  (First Amended Complaint at 30-32.)
Pointing to said defendants' failure to take any action against another
inmate in possession of the same religious calendar, plaintiff contends
that the charges against him were motivated by retaliation.  (*Id.*)

Plaintiff, however, has not alleged a factual basis for inferring
a connection between the decision to bring disciplinary charges and the
administrative grievances he had filed.  Plaintiff does not allege that
he filed grievances against Halbeisen, Lane-Lewis, or Baker, or that
these defendants ever evinced animosity toward him for the grievances
he filed against other persons.  Indeed, he does not even allege that
they were aware of his administrative remedies.  Thus, plaintiff has not
sufficiently alleged a retaliatory motive on the part of Halbeisen,
Lane-Lewis, and Baker.  *See* Iqbal, 129 S. Ct. at 1949.  Nor has
plaintiff sufficiently alleged a retaliatory act by Baker, who merely
helped escort plaintiff.

### E.   Claim Against Ericksen

Plaintiff alleges that after he filed a grievance regarding his
need for pain medication, Ericksen met with him and promised that he
would receive pain medication if he withdrew his grievance.  Plaintiff
withdrew the grievance, but he was not given his pain medication.
(First Amended Complaint at 27.)  Plaintiff contends that Ericksen
tricked him into withdrawing his grievance with a false promise and,
thus, "violated his First Amendment rights in the form of vindictive
retaliation."  (*Id.*)

Once again, plaintiff has not alleged a retaliatory motive. *See* *Iqbal*, 129 S. Ct. at 1949. He has alleged that Ericksen tricked him into withdrawing his grievance, but he has not alleged that she did so in retaliation for his exercise of his administrative remedies. Thus, plaintiff has not alleged a retaliation claim against Ericksen.

**F.   Retaliation Claim Against McFadden**

Although plaintiff does not include a claim against Robert McFadden, regional director of the Western Region of BOP, in his "Statement of Claims," plaintiff, in the body of the complaint, contends that McFadden retaliated against him for exercising his First Amendment rights by including a false and defamatory statement in his response to plaintiff's administrative appeal of his disciplinary conviction for possession of unauthorized property. (First Amended Complaint at 7-8, 33-34.) Specifically, the response stated: "The DHO report clearly indicates that you committed the prohibited act and explains the purpose of imposing that sanctions which are within policy. We find the DHO had sufficient evidence to conclude that you assaulted the other inmate." (*Id.*, Ex. 4F.) Plaintiff contends that this statement is defamatory and retaliatory, because he has never either assaulted another inmate or been charged with doing so. (First Amended Complaint at 33-34.)

The reference to inmate assault in McFadden's response to plaintiff's administrative appeal of his disciplinary conviction for possession of unauthorized property makes no sense and may well be a mistake. However, plaintiff's contention that McFadden inserted the reference to inmate assault into his response to retaliate against

16

1  plaintiff for exercising an administrative remedy is too far-fetched to

2  provide a factual basis for a plausible allegation of retaliatory motive

3  on his part.  *See* <u>Iqbal</u>, 129 S. Ct. at 1949.   Plaintiff, therefore,

4  fails to state a retaliation claim against McFadden.

5

6  **III.  <u>PLAINTIFF FAILS TO STATE A CLAIM FOR DELIBERATE INDIFFERENCE TO</u>**

7      **<u>HIS SAFETY.</u>**

8

9      Plaintiff   contends   that   Espinoza   demonstrated   deliberate

10 indifference to his safety, in violation of the Eighth Amendment, by

11 failing to have a wet spot in the gym cleaned up.  (First Amended

12 Complaint at 20.)  Plaintiff slipped and fell, rupturing his Achilles

13 tendon.  (*Id.*)  He has attached to his First Amended Complaint a

14 declaration by another inmate, who declares that:  the roof of the gym

15 leaks water onto the floor; inmates are "always slipping" in the gym;

16 and he and other inmates alerted Espinoza, before plaintiff's fall, that

17 a section of the gym floor was wet again.  (*Id.,* Ex. 3C.)

18

19     The Eighth Amendment liability requires "more than ordinary lack

20 of due care for the prisoner's interests or safety." <u>Whitley v. Albers</u>,

21 475 U.S. 312, 319, 106 S. Ct. 1078, 1084 (1986).  To be liable, the

22 prison  official  must  have  displayed  deliberate  indifference  to  a

23 substantial risk of serious harm to an inmate.  <u>Farmer v. Brennan</u>, 511

24 U.S. 825, 828, 114 S. Ct. 1970, 1974 (1994).  The official must know of

25 and disregard an excessive risk to inmate health or safety; she must

26 have been aware of facts from which the inference could be drawn that

27 a substantial risk of serious harm existed, and must actually have drawn

28 the inference.  *Id.* at 837, 114 S. Ct. at 1979.

Plaintiff alleges that:  Espinoza was informed of the wet spot prior to his fall; she knew or should have known the danger it posed; and she should have taken prompt action to have it mopped up.  (First Amended Complaint at 20, Ex. 3C.)  These allegations show at most a lack of due care on Espinoza's part and are not sufficient to allege a constitutional deprivation. *See* Daniels v. Williams, 474 U.S. 327, 331-32, 106 S. Ct. 662, 665-66 (1986); *see also* Farmer, 511 U.S. at 835, 114 S. Ct. at 1978 (deliberate indifference entails more than mere negligence).

Moreover, the Ninth Circuit has declared that "slippery prison floors . . . do not state even an arguable claim for cruel and unusual punishment." LeMaire v. Maass, 12 F.3d 1444, 1457 (9th Cir. 1993) (internal quotation marks and citation omitted).  In general, federal courts have rejected constitutional claims brought by inmates injured as a result of a "slip and fall" caused by a hazardous condition. *See, e.g.,* Daniels 474 U.S. at 331-33, 106 S. Ct. at 665-66 (rejecting due process claim by pretrial detainee who slipped and fell when a pillow was negligently left on the stairs by a deputy); Wallace v. Haythorne, 2007 WL 3010755, *4 (E.D. Cal., Oct. 15, 2007)(no triable issue as to deliberate indifference when an inmate fell after tripping on a hole in a kitchen floor; holes caused by missing tiles did not constitute an excessive risk), *adopted by* 2007 WL 4358230, *3-*4 (E.D. Cal., Dec. 11, 2007), *aff'd*, 328 Fed. Appx. 467, 2009 WL 2015051 (9th Cir., June 16, 2009); Townsel v. Quinn, 2008 WL 650284, *3-5 (W.D. Wash., Jan. 24, 2008)(inmate who slipped while exiting shower and injured his hand on sharp metal plates on the floor attributed his injuries to unsafe conditions in the shower; claims dismissed for lack of facts showing

that defendants knew and disregarded risks); *adopted by* 2009 WL 674386 (W.D. Wash., March 13, 2009); <u>Mende v. Renner</u>, 1994 WL 139289, *1 (N.D. Cal., Apr. 1994)(plaintiff who slipped and fell in shower room due to wet floor caused by dripping shower did not have a Section 1983 claim).

Accordingly, plaintiff fails to state an Eighth Amendment claim for deliberate indifference to his safety.

**IV.   THE COURT HAS NO JURISDICTION OVER PLAINTIFF'S UNTIMELY FTCA CLAIM**

Plaintiff asserts a negligence claim against Espinoza and the BOP under the FTCA.  (First Amended Complaint at 21.)

The United States is the only proper defendant in an action brought under the FTCA.  <u>Kennedy v. U.S. Postal Service</u>, 145 F.3d 1077, 1078 (9th Cir. 1998).  Neither the BOP nor Espinoza are proper defendants for plaintiff's FTCA claim..

Before he can file a federal lawsuit under the FTCA, plaintiff must have filed an administrative claim and received a final determination of his claim.  28 U.S.C. § 2675(a).  A plaintiff must file his administrative claim with the appropriate agency within two years of the date his claim accrued.  28 U.S.C. § 2401(b).  He must file a lawsuit within six months of the date he is served with notice of the denial of his administrative claim.  *Id.*  After six months, the "tort claim against the United States shall be forever barred."  *Id.*

Plaintiff asserts that his administrative claim was denied, but

1   acknowledges that his FTCA claim in this court is untimely.[6]  (First
2   Amended Complaint at 21-22.)  He seeks equitable tolling of the six-
3   month deadline.  (*Id.*)  Although the United States Supreme Court has not
4   yet resolved the issue, the Ninth Circuit has unambiguously held that
5   "[t]he FTCA's statute of limitations is jurisdictional and not subject
6   to equitable tolling or estoppel."  <u>Adams v. United States</u>, 658 F.3d
7   928, 933 (9th Cir. 2011)(citing <u>Marley v. United States</u>, 567 F.3d 1030,
8   1038 (9th Cir. 2009)).  The Circuit Court's holding is binding on this
9   Court.  The Court, therefore, has no jurisdiction over plaintiff's FTCA
10  claim.

11

12  **V.   <u>PLAINTIFF FAILS TO STATE A CLAIM UNDER TITLE VII</u>.**

13

14      Plaintiff asserts that the racial slurs and threats to retaliate
15  directed at him, on separate occasions, by Flores and Halbeisen violated
16  Title VII.  (First Amended Complaint at 8-9.)

17

18      Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et
19  seq., as amended, prohibits employment discrimination on the basis of
20  race, color, religion, sex, or national origin.  <u>Ricci v. DeStefano</u>, 557
21  U.S. 557, 577, 129 S. Ct. 2658, 2672 (2009)  The conduct alleged by
22  plaintiff does not arise in the employment context, and his allegations
23  do not implicate Title VII under any cognizable legal theory.  *See*
24  <u>Balistreri v. Pacifica Police Department</u>, 901 F.3d 696, 699 (9th Cir.

25  _____

26      [6]   Before commencing this action, plaintiff sought an extension
    of time to file his FTCA claim; his request was denied as premature,
27  because he had not yet filed a lawsuit. *See* docket in <u>Morgan v. United
    States Bureau of Prisons</u>, CV 12-1758-PA (MAN). Plaintiff asserted that
28  his administrative claim was denied on or about July 18, 2011.

1990).  Hence, no Title VII claim is stated.

VI.  **PLAINTIFF FAILS TO STATE A CLAIM FOR DELIBERATE INDIFFERENCE TO HIS SERIOUS MEDICAL NEEDS.**

Plaintiff asserts claims against MLP Tan, AHSA Salandana, and Drs. Gross, Giron, and Dahli-Wahl for deliberate indifference to his serious medical needs.  (First Amended Complaint at 23-26.)

A.  **Applicable Law**

A prisoner asserting a Section 1983 claim for denial of medical care must show "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976).  A serious medical need exists if failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain. McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by* WMX Technologies, Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997)(*en banc*).  Deliberate indifference requires that defendants purposefully ignore or fail to respond to the prisoner's pain or medical need. McGuckin, 974 F.2d at 1060.  Deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown in the way in which prison physicians provide medical care." *Id.* at 1059.

"Deliberate indifference is a high legal standard." Toquchi v. Chunq, 391 F.3d 1051, 1060 (9th Cir. 2004).  A showing of medical

malpractice or negligence is insufficient to establish deliberate indifference. *Id.* "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 105-06, 97 S. Ct. at 292.

If medical treatment is delayed rather than denied, the delay generally amounts to deliberate indifference only if it caused further harm. Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)(*per curiam*). Moreover, a mere difference of opinion between an inmate and medical staff, or among medical staff, regarding appropriate medical treatment is generally insufficient to constitute deliberate indifference. *See* Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). A prisoner asserting an Eighth Amendment claim against his physician must show that the course of treatment the physician chose was medically unacceptable under the circumstances, and that the physician chose it in conscious disregard of an excessive risk to the plaintiff's health. Toguchi, 391 F.3d at 1058; Jackson, 90 F.3d at 332.

**B.   Analysis**

The Court construes the First Amended Complaint to allege Eighth Amendment claims arising out of: (1) the failure to provide plaintiff with pain medication until after his surgery; and (2) Dr. Gross's

22

substitution of Tylenol 3 for Vicodin, which plaintiff's surgeon had prescribed to treat plaintiff's post-surgery pain. Plaintiff also challenges the refusal to provide him with physical therapy, as ordered by the surgeon, but it is unclear whether he is asserting a constitutional claim on this basis or only a tort claim.

### 1.  <u>Pre-Surgery Pain Medication</u>

Plaintiff alleges that MLP Tan, who examined him after his fall, did not prescribe pain medication even though plaintiff was in obvious pain and unable to walk. (First Amended Complaint at 23.) Plaintiff was not prescribed pain medication until four days later, and he did not actually receive any until after his surgery, some seven days after he sustained his injury. (*Id.*) In general, delays in administering pain medication do not constitute deliberate indifference. <u>Frost v. Agnos</u>, 152 F.3d 1124, 1130 (9th Cir. 1998); *but see* <u>Looman v. Wick</u>, 329 Fed. Appx. 729 (9th Cir., May 26, 2009)(allegation that plaintiff suffered severe pain when he was deprived of pain medication for up to eight hours after hernia surgery stated a claim).

Here, even assuming that the one-week delay in administering pain medication for plaintiff's ruptured Achilles tendon met the objective prong for an Eighth Amendment violation, plaintiff has not alleged deliberate indifference by any of the defendants. Plaintiff's allegation that MLP Tan failed to prescribe pain medication during his initial examination is not sufficient to allege deliberate indifference, especially as she apparently told him that he would receive pain medication at that evening's "pill call." (First Amended Complaint at

23.)  Plaintiff does not allege that he saw Tan again, and there are no factual allegations from which the Court could infer that she was responsible for the entire seven-day delay.  Moreover, to the extent plaintiff also asserts this claim against defendants Salandana, Gross, Giron, and Dahli-Wahl, he has not alleged that these defendants were aware of his need for pain medication or that they had anything to do with the failure to provide pain medication prior to his surgery.  Thus, he has not alleged deliberate indifference by any of them.  *See* Estelle, 429 U.S. at 106, 97 S. Ct. at 292.

### 2.   Post-Surgery Pain Medication

Plaintiff alleges that his surgeon prescribed Vicodin for his post-surgery pain, but Dr. Gross prescribed Tylenol 3 instead.  (First Amended Complaint at 24-25.)  Plaintiff alleges that the Tylenol 3 did nothing to alleviate his pain.  (*Id.* at 24.)  He contends that any physician would know that Tylenol 3 is significantly less effective than Vicodin and would be insufficient to treat post-surgery pain.  (*Id.* at 26-27.)

As explained above, a difference of opinion among medical staff regarding appropriate medical treatment is generally insufficient to constitute deliberate indifference; the plaintiff must show that the treatment chosen by his physicians was medically unacceptable under the circumstances and was chosen in conscious disregard of an excessive risk to his health.  *See* Toguchi, 391 F.3d at 1058; Jackson, 90 F.3d at 332; Sanchez, 891 F.2d at 242.  Inmates asserting Eighth Amendment claims against prison medical staff for substituting Tylenol 3 for Vicodin have

1   generally been unable to meet this stringent standard, at least on

2   summary judgment.[7]

3

4       Plaintiff contends that the Tylenol 3 was medically unacceptable

5   to treat the severe pain he suffered after his Achilles tendon surgery,

6   and that it provided him with no relief. (First Amended Complaint at

7   24, 26.) First, other than Dr. Gross, plaintiff does not specify what

8   role defendants played in the decision to provide him with Tylenol 3,

9   rather than Vicodin. Second, plaintiff does not allege that any of the

10  defendants, including Dr. Gross, knew that the Tylenol 3 prescribed for

11  him would not and/or did not alleviate his severe pain. *Contrast* <u>Cruz</u>,

12  2011 WL 6003142, at *4 (defendants refused to provide Vicodin prescribed

13  by surgeon, despite observing plaintiff's obvious pain). Thus,

14  plaintiff has not alleged a factual basis for inferring that the choice

15  of Tylenol 3 over Vicodin was made in conscious disregard of a serious

16  risk to his health. Accordingly, he has not alleged a claim based on

17

18          [7]   *See* <u>Hernandez v. Harrison</u>, 2009 WL 799314, *9-10 (C.D. Cal.,
    March 20, 2009)(prison physician who substituted Tylenol 3 for Vicodin
19  prescribed by outside surgeon was entitled to summary judgment when
    plaintiff failed to controvert evidence that that Tylenol 3 and Vicodin
20  have comparable pain-relieving properties, Vicodin is addictive, and the
    prison prohibited inmates from receiving Vicodin); <u>Sweet v. Lucine</u>, 2002
21  WL 31855365, *4 (N.D. Cal., Dec. 16, 2002)(prison physician who
    substituted Tylenol 3 for Vicodin prescribed by outside physician was
22  entitled to summary judgment when uncontroverted evidence showed that
    the two pain medications have comparable properties); *contrast* <u>Cruz v.</u>
23  <u>Michaels</u>, 2011 WL 6003142, *1, 4 (E.D. Cal., Nov. 30, 2011)(at the
    pleading level, inmate stated a claim when he alleged that: after his
24  hernia surgery, his surgeon prescribed Vicodin for post-surgical pain;
    medical staff refused to give him Vicodin, initially provided him with
25  Tylenol 3, and subsequently provided no medication at all, knowing he
    would suffer severe pain; the Tylenol 3 wholly failed to alleviate his
26  severe pain; and defendants knew of inmate's continuing pain), *adopted*
    *by,* 2012 WL 868993 (E.D. Cal., Mar. 13, 2012).
27

28

1    the treatment of his post-surgery pain.

2

3              **3.    <u>Failure To Provide Physical Therapy</u>**

4

5        Plaintiff alleges that his surgeon prescribed physical therapy, but

6    he never received any and defendant Dahli-Wahl told him that he never

7    would.   (First Amended Complaint at 29.)   As a result, 15 months after

8    the surgery, plaintiff cannot fully extend the affected tendon while

9    walking, and he continues to suffer extreme tightness and a burning

10   sensation.   (*Id.*)

11

12       Failure to provide physical therapy can be a basis for an Eighth

13   Amendment claim.   *See* <u>Lindsey v. Fitter</u>, 386 Fed. Appx. 739, 740 (9th

14   Cir., July 12, 2010)(finding a triable issue regarding whether 20-month

15   delay in providing physical therapy for fractured femur constituted

16   deliberate indifference).   Plaintiff, however, appears to be asserting

17   only a tort claim, not an Eighth Amendment claim, on this basis.   (First

18   Amended Complaint at 29.)   There is no indication in the First Amended

19   Complaint that plaintiff filed an administrative claim under the FTCA

20   regarding his physical therapy.   Compliance with the FTCA is

21   jurisdictional.   <u>Brady</u>, 211 F.3d at 502.   If plaintiff has not complied

22   with the FTCA administrative claims procedure, he cannot pursue his tort

23   claim in this Court.

24

25   **VII.  <u>THE BOP IS NOT A PROPER DEFENDANT IN THIS ACTION</u>.**

26

27       Plaintiff has included the BOP as a defendant.   Plaintiff cannot

28   assert a *Bivens* claim against a federal agency such as the BOP.

1    F.D.I.C. v. Meyer, 510 U.S. 471, 486, 114 S. Ct. 996, 1006 (1994).

2    Apparently recognizing this, plaintiff contends that he has included the

3    BOP as a defendant only as to his tort claims. (First Amended Complaint

4    at 7.)  However, the United States is the only proper defendant in an

5    FTCA action.  F.D.I.C. v. Craft, 157 F.3d 697, 706 (9th Cir. 1998);

6    Kennedy, 145 F.3d at 1078.  Plaintiff, therefore, cannot state either

7    a *Bivens* or an FTCA claim against the BOP.

8

9                              **CONCLUSION**

10

11        For the foregoing reasons, the First Amended Complaint is dismissed

12   with leave to amend.  If plaintiff wishes to pursue this action, he is

13   granted thirty (30) days from the date of this Memorandum and Order

14   within which to file a Second Amended Complaint that attempts to cure

15   the defects in the Complaint described herein.  The Second Amended

16   Complaint, if any, shall be complete in itself.  It shall not refer in

17   any manner to the original Complaint.

18

19        **Plaintiff is explicitly cautioned that failure to timely file a**

20   **Second Amended Complaint, or failure to correct the deficiencies**

21   **described herein, may result in a recommendation that this action be**

22   **dismissed.**

23

24   DATED: November 16, 2012

25                                    _____

26                                         MARGARET A. NAGLE
                                     UNITED STATES MAGISTRATE JUDGE

27

28

                                   27